```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF MICHIGAN
                   SOUTHERN DIVISION
```

UNITED STATES OF AMERICA,

        Plaintiff,

                              HONORABLE NANCY G. EDMUNDS

   v.

                              Case No. 14-CR-20614

JASON FLOAREA,

        Defendant.

_____/

                    SENTENCING HEARING

               Thursday, April 16, 2015

Appearances:

Kenneth R. Chadwell
Gjon Juncaj
U.S. Attorney's Office
211 W. Fort Street, Suite 2001
Detroit, MI 48226
313-226-9100
Email: ken.chadwell@usdoj.gov
On behalf of Plaintiff

James C. Thomas
O'Reilly Rancilio P.C.
12900 Hall Road, Suite 350
Sterling Heights, MI 48313
586-726-1000
Email: jthomas@orlaw.com
On behalf of Defendant

ALSO PRESENT:  Jim Baldinger, Counsel for Sprint Corporation

                                -  -  -
        Suzanne Jacques, Official Court Reporter
www.transcriptorders.com • email: jacques@transcriptorders.com

Sentencing Hearing
Thursday, April 16, 2015

1
2
3               **I  N  D  E  X**
4                   -   -   -
5  Proceeding                                          Page
6   **Sentencing Hearing**
7   Comments by Mr. Clint Breithaupt                    5
8   Allocution by Mr. Thomas                            7
9   Allocution by Mr. Chadwell                          9
10  Comments by Mr. Juncaj                             10
11  Allocution by the Defendant                        11
12
13 Sentence of the Court                               13
14
15  Certification of Court Reporter                    19
16
17
18
19
20
21
22
23
24
25

Case No. 14-CR-20614 U.S.A. vs. Floarea

| | |
|---|---|
| 1 | Detroit, Michigan |
| 2 | Thursday, April 16, 2015 |
| 3 | 9:35 a.m. |
| 4 | - - - |
| 5 | **THE CLERK:** Case number 14-20614, U.S.A. vs. Jason |
| 6 | Floarea.  Date and time set for sentencing.  Counsel, state |
| 7 | your appearances for the record. |
| 8 | **MR. CHADWELL:** Good morning, Your Honor, Kenneth |
| 9 | Chadwell for the United States. |
| 10 | **MR. JUNCAJ:** Gjon Juncaj for the United States. |
| 11 | **MR. THOMAS:** James Thomas on behalf of Jason |
| 12 | Floarea who is with me here today. |
| 13 | **MR. BALDINGER:** James Baldinger on behalf of Sprint |
| 14 | Corporation, the victim in this case. |
| 15 | **THE COURT:** Good morning.  Be seated.  This is the |
| 16 | date and time set for sentencing in this matter.  I think I |
| 17 | took the plea and the -- plea agreement under advisement at |
| 18 | the time I accepted the Rule 11.  You still want me to accept |
| 19 | it, I assume? |
| 20 | **MR. CHADWELL:** Yes, Your Honor. |
| 21 | **MR. THOMAS:** I ask you to, yes. |
| 22 | **THE COURT:** I will do that. |
| 23 | Mr. Thomas, have you had an opportunity to review |
| 24 | the Presence Investigation Report with Mr. Floarea? |
| 25 | **MR. THOMAS:** I have, Judge.  It's complete and |

1   accurate in all respects.  We reviewed the sentencing
2   guidelines calculation, and we understand the sentencing
3   guideline range is going to be 12 to 18 months with a category
4   I, 12 to 18 months guideline range.
5           **THE COURT:**  Right.  Any objections for the
6   government, Mr. Chadwell?
7           **MR. CHADWELL:**  No, Your Honor.
8           **THE COURT:**  I should just point out that with the
9   agreement that was reached with Sprint recently, technically,
10  I should raise the guideline range because the loss amount is
11  greater, but I'm not going to do that for purposes of
12  sentencing.
13          **MR. THOMAS:**  It was our understanding by entering
14  into the agreement that we would not increase the guideline
15  range by doing that, and I appreciate that, Judge.
16          **MR. CHADWELL:**  And from the government's point of
17  view, the guideline range is sufficient to address...
18          **THE COURT:**  I appreciate that.  I understand.
19          I understand, Mr. Baldinger, you wish to make a
20  statement?
21          **MR. BALDINGER:**  Actually, Your Honor, my client is
22  here and would like to address the Court.
23          **THE COURT:**  That would be fine.  Brief statement?
24          **MR. BALDINGER:**  Your Honor, this is Mr. Clint
25  Breithaupt.  He is a senior investigator, fraud manager from

1   Sprint, who wanted to address the Court regarding the

2   defendant's conduct and the impact it has had.

3   Do you want him to be sworn?

4   **THE COURT:** No, he doesn't need to be sworn.  Go

5   ahead.

6   **MR. BREITHAUPT:** Your Honor, my name is Clint

7   Breithaupt and I represent Sprint Corporation and its

8   subsidiaries in federal civil lawsuits against handset

9   traffickers.  I'm here today to explain the significant harm

10  that Mr. Floarea's conduct caused to Sprint.

11  I've worked for Sprint for almost 16 years.  Prior

12  to that, I was a law enforcement officer for five years, and

13  for 21 years I have investigated multiple types of criminal

14  activities.  During that time, I've never seen a criminal

15  enterprise as large as the one that Jason Floarea operated

16  under Ace Wholesale Incorporated.  In fact, all of the other

17  handset traffickers in this area that Sprint has sued all say

18  that they learned the business from Jason Floarea, and that,

19  in fact, he's the godfather of handset trafficking.

20  The magnitude of wireless handsets trafficked, and

21  subsequent losses, in this case is staggering.  I'm not aware

22  of any other prosecution of a handset trafficker who has dealt

23  in such large quantities of phones.

24  From October 2010 until the company was shut down

25  by law enforcement in August of 2012, Mr. Floarea's company

1   trafficked in 371,702 wireless handsets, which he then sold,
2   primarily overseas to China, for $151 million.  Of those,
3   67,753 were Sprint handsets which Ace Wholesale sold for over
4   $24 million.  Sprint losses exceed over $85 million in this
5   case.  Myself as well as other members of Sprint's fraud
6   department analyzed the data and identified that at least
7   42,382 of these Sprint handsets were obtained by fraudulent
8   means.
9               Handset trafficking has cost Sprint hundreds of
10  millions of dollars.  These traffickers take advantage of
11  programs that Sprint offers to make its phones more affordable
12  to its customers.  Not only does this harm Sprint, but it
13  harms our consumers.
14              Mr. Floarea's crimes against Sprint helped fuel a
15  wave of violent crime throughout the communities that he
16  operated in.  In fact, in a report by the U.S. Department of
17  Justice Bureau Assistance stated significant increase of the
18  theft of wireless phones, and lists Detroit as having the
19  sixth highest rate of smartphone thefts per capita in the
20  nation.
21              Sprint implemented a program to take aggressive
22  action against handset traffickers like Ace Wholesale and
23  Jason Floarea.  To date, Sprint has filed 57 lawsuits against
24  198 handset trafficker defendants in federal courts across the
25  country.

| | |
|---:|---|
| 1 | Too often with this type of criminal activity, |
| 2 | there is so much money involved that being incarcerated is |
| 3 | just the cost of doing business.  Sprint asks the Court to |
| 4 | send a message today to Mr. Floarea and anyone else thinking |
| 5 | of conducting this type of criminal activity that you can't |
| 6 | afford to do business in the State of Michigan. |
| 7 | Sprint urges the Court to consider a prison term of |
| 8 | 18 months for Mr. Floarea. |
| 9 | Thank you. |
| 10 | **THE COURT:**  Thank you. |
| 11 | **MR. BALDINGER:**  Thank you, Your Honor. |
| 12 | **THE COURT:**  Sure. |
| 13 | Mr. Thomas, is there anything you'd like to say on |
| 14 | behalf of Mr. Floarea before I impose sentence? |
| 15 | **MR. THOMAS:**  Your Honor, should we address you from |
| 16 | here, or shall we approach? |
| 17 | **THE COURT:**  Be easier if you would address me from |
| 18 | the podium, easier for Suzanne I think, too. |
| 19 | **MR. THOMAS:**  I did not expect to hear from Sprint |
| 20 | on this, especially since we had settled the case.  And |
| 21 | despite the hyperbole of what it was that was just said to |
| 22 | you, we stand here and have been ready to resolve our issue, |
| 23 | to pay our debts, to withstand the significant forfeitures |
| 24 | that have occurred in this case, and to be ready for the |
| 25 | sentencing that you're going to impose. |

1   You have the ability to depart downward, you know
2   that. I don't have to argue about the case law that goes for
3   that. I presented to you a sentencing memorandum which shows
4   the other side of Mr. Floarea; the fact that he's a family
5   man, that he has four small children at home, that he has a
6   devoted wife, how much he's given up as a result of being
7   involved in what was alleged by the government and what we
8   ultimately did resolve by one count of plea by information.
9         We have resolved with Sprint in spite of the
10  hyperbole of that conversation that you just heard, that case,
11  by agreeing to the $600,000 that has been stipulated to in
12  part of the restitution agreement.
13        I ask that the Court take into consideration all
14  the purposes of sentencing, not send a message, but to take a
15  look at Mr. Floarea individually and sentence him accordingly.
16        I've had the chance to be with him since the
17  beginning of this investigation. He has been diligent, he's
18  been straightforward, he's come to me and has attempted to try
19  and resolve it over these years. Mr. Chadwell has been more
20  than patient with us in working out what we think is a
21  reasonable solution to this case.
22        So I'm going to leave it to your discretion. Of
23  course, he does not want to go to prison. His wife is here,
24  she doesn't want him to go to prison. You have the ability to
25  give him a sentence anywhere between probation and the

1  guidelines, to the top of the guidelines, and so I'm asking
2  you to use your discretion.
3              **THE COURT:**  Thank you, Mr. Thomas.
4              **THE DEFENDANT:**  Can I say something?
5              **THE COURT:**  You will in just a second.  I'm going
6  to ask the government first, and then I'm going to come back
7  and give you the last word, okay?
8              **THE DEFENDANT:**  All right.
9              **THE COURT:**  Thank you.  Mr. Chadwell.
10             **MR. CHADWELL:**  We'll just remain here, Your Honor.
11             **THE COURT:**  That's okay.
12             **MR. CHADWELL:**  Your Honor, from the government's
13 point of view, we do think prison is warranted in this case
14 for really two reasons.  One is, if someone engages in a fraud
15 scheme and makes a couple million dollars and only has to pay
16 part of it back and that's it, that's a pretty good deal, and
17 that would encourage other people to continue to do that sort
18 of thing.  Your Honor does need to send a message out to
19 society for the general deterrence to discourage other people
20 from doing this.
21             And the second reason we think jail is warranted is
22 that Mr. Floarea's conduct does encourage other people to
23 commit more serious criminal activity.  There are a lot of
24 cell phone store armed robberies in this area, and Mr. Floarea
25 himself would never do that himself, but because he engaged in

1   this business it does encourage people to either do that or to
2   engage in the fraudulent activities that Your Honor has also
3   heard about in various memoranda in this case.  And so we do
4   think that other criminal activity occurred because of
5   Mr. Floarea's conduct.  We can't say specifically which
6   crimes, but he was engaging in it enough that that did
7   encourage people to commit other more serious crimes.  And so
8   for both of those reasons, we believe Your Honor should impose
9   imprisonment in this case.
10              Mr. Juncaj has a couple comments on the financial
11  matters that are still outstanding.
12              **MR. JUNCAJ:**  Thank you, Your Honor.  Very briefly,
13  the Court recently entered a stipulated order of forfeiture in
14  the amount of $120,000 money judgment which is payable within
15  60 days.  Separate and apart from forfeiture in this case, the
16  government has initiated a civil forfeiture procedure also,
17  which Mr. Floarea has agreed not to challenge the forfeiture
18  of all the assets in that case, which is about $900,000 and
19  thousands of electronic devices.
20              **THE COURT:**  Do you have a copy of the forfeiture
21  agreement?  The file was put together before we --
22              **MR. JUNCAJ:**  I think so, Your Honor.  It's a
23  stipulated preliminary order of forfeiture.
24              **THE COURT:**  I've got it, I'm sorry.
25              **MR. JUNCAJ:**  Okay.  And just so it's noted on the

1      record today, there is the restitution that was ordered by the
2      Court and agreed upon, the $600,000.
3              **THE COURT:** I have that, too. Restitution of
4      $600,000.
5              **MR. JUNCAJ:** And then we ask that all that be
6      included in the judgment, Your Honor.
7              **THE COURT:** Of course.
8              **MR. JUNCAJ:** Thank you, Your Honor.
9              **THE COURT:** Mr. Floarea, I'm happy to hear anything
10     you want to say on your own behalf before I impose sentence.
11             **THE DEFENDANT:** Your Honor, I hear this stuff going
12     on today, and I'm in shock. When I look at the amounts that
13     they're claiming with losses, in regards to losses, I'm not
14     talking about facts in general, I'm just talking about the
15     magnitude.
16             Overall, when I started the business, when I went
17     through it, I did it with a clean conscience, not doing it
18     originally thinking this is something wrong or I'm doing it to
19     defraud someone intentionally. As the case progressed, after
20     I got shut down, thus far two and-a-half years, two years and
21     ten months ago roughly, I started hearing about these facts,
22     started hearing about the law, started understanding, okay, so
23     subsidized phones that go out, they're fraud, okay. So I'm
24     guilty of that if that's the law. I take responsibility. If
25     that's the law, we buy something that was once obtained

1   through subsidized means, I'll obtain that guilt because
2   that's when I found out that that was illegal.  Had I known
3   this ahead of time, I would have never been engaged in that.
4           Simply, how we bought it is how we sold it.  We
5   were middle men, and I did not make these kind of -- you heard
6   numbers of millions right now, $80 million losses.  Judge, we
7   worked on a flat rate of 5 to 6 percent profit, period.  These
8   are not profit.  I'm broke, I have no money.  It's been two
9   and-a-half years.  Everything I have has been forfeited.  You
10  know what I'm saying, Your Honor?
11          **THE COURT:**  I do.
12          **THE DEFENDANT:**  So two and-a-half years now has not
13  been easy for me, for our family.  It's been stress, it's been
14  a strain on us completely in every -- I mean, other people
15  have lost their minds in this.  This is only mercy of God that
16  got me through this so far.
17          Whatever is left is already gone.  All I have left
18  is my family, honest.  I'm only left in debt over my head from
19  this.  I still have a lot to pay back from here.  All this is
20  forfeited.  I have nothing to live on from now on.  This is
21  it.  The house, the house is gone, all this is going to be
22  zero.  I still got to work in the future decades to pay back
23  investors that came out because all that money that was
24  seized, that was not my personal money, that was investors'
25  money, working capital.  But I'm still responsible on that

1   because I gave my word.

2              **MR. THOMAS:**  Now, I've told you three times --

3              **THE DEFENDANT:**  I'm sorry, Your Honor, it's a lot
4   of pressure, a lot of stuff for all this time.

5              **THE COURT:**  I'm sure it is.

6              **THE DEFENDANT:**  Thank you.

7              **THE COURT:**  Thank you, Mr. Floarea.

8              Well, this is a sad and difficult case.  The
9   guideline provisions are agreed at 12 to 18 months, and that
10  was the agreement in the Rule 11 agreement, as well, which I
11  did accept.  Guidelines are advisory, they're not mandatory.
12  The Court is directed to look at the factors under 18 U.S.C.
13  Section 3553(a), to impose a sentence sufficient but not
14  greater than necessary to achieve the statutory objectives.

15             The first factor the Court is directed to consider
16  is the nature and circumstance of the offense and the history
17  and characteristics of the defendant.  We do see two different
18  Jason Floareas here.  We see a devoted family man who I think
19  basically is a good person and has a lot to offer to the
20  community, to his neighbors, his family, no question about
21  that.  On the other hand, this was a widespread enterprise
22  that, as the government pointed out, does encourage other
23  criminal activity.

24             The losses to Sprint were considerable, and to
25  Verizon as well, I believe.  I mean, I have no reason to

1  disbelieve Mr. Floarea when he says he didn't realize at the
2  outset that what he was doing was criminal, but he knew it at
3  some point, and it was a very large and widespread enterprise.
4  So that's one factor.
5           The second factor is the seriousness of the offense
6  and to promote respect for the law and to provide just
7  punishment for the offense.  I mean, it's a serious economic
8  offense.  It's not a violent offense, but again, as the
9  government suggests, it has the tendency to promote violence
10 from others.  But this kind of widespread activity and the
11 amount of money that can be made doing it does have a tendency
12 to promote violence.
13          We do need to provide some punishment.  That's what
14 the guidelines intend to do, they try to do.  I really look at
15 this factor as a guidelines factor.  The guidelines try to
16 take all of these factors into consideration when reaching the
17 12 to 18 months that's suggested.
18          The deterrence to criminal conduct and the need to
19 protect the public from further crimes of the defendant, I
20 would say it's unlikely that this defendant is going to commit
21 anymore crimes given how devastating this has been for him and
22 for his family, but it is important to establish social
23 deterrence in this case.  Others need to see that this kind of
24 activity will not go unpunished and that the bottom line is
25 not worth it.

1      The other factors aren't really at issue here.
2 There's no need for educational or vocational training,
3 medical care, et cetera. So having said all of that, I think
4 that a short custodial sentence is warranted here, and I know
5 that's going to be hard not just for Mr. Floarea but for his
6 family, for his wife who has been very devoted and supportive
7 through all of this, for his children who want their dad back.
8 I don't think a long custodial sentence is required, but I do
9 believe that a sentence at the bottom of the guideline range
10 is in fact appropriate in this case.
11      So on Count 1 of the Information, pursuant to the
12 Sentencing Reform Act of 1984, the Court, having considered
13 the guideline factors contained in 18 U.S.C. 3553(a), hereby
14 places defendant Jason Floarea into the custody of the Bureau
15 of Prisons for a term of 12 months and one day. The reason
16 it's 12 months and one day is that that gives you the time off
17 at the end of the first year, so essentially is a sentence of
18 ten and-a-half months.
19      A two-year term of supervised release is imposed to
20 follow the term of imprisonment. A special assessment of $100
21 is ordered due immediately. The Court finds that given the
22 restitution obligation and the substantial forfeitures, the
23 defendant does not have the ability to pay a fine and
24 therefore does not order one. The Court also waives the costs
25 of incarceration and supervision.

1    I don't think mandatory, the mandatory drug testing

2    requirement is necessary. Do you agree, Mr. Chadwell?

3            **MR. CHADWELL:** That's correct, Your Honor.

4            **MR. THOMAS:** I do, too.

5            **THE COURT:** So I'm going to waive the mandatory

6    drug testing. While on supervised release, defendant shall

7    abide by the standard conditions adopted by this Court as well

8    as the following special condition. Defendant shall make

9    monthly installment payments on any outstanding restitution

10   and forfeiture obligations at a rate recommended by the

11   probation department and approved by the Court. The defendant

12   shall not incur any new credit charges or open additional

13   lines of credit without the approval of the probation officer.

14   Defendant shall provide the probation officer access to any

15   requested financial information.

16           **THE DEFENDANT:** Your Honor, is there any way I can

17   be at home, at least kind of home, house arrest or something,

18   with my kids? It's going to be crazy with four kids and my

19   wife alone.

20           **THE COURT:** I'm sorry, Mr. Floarea, I believe that

21   the sentence I've stated is the appropriate sentence in this

22   case.

23           There's a little bit more. Due to the history of

24   mental health issues, the following special condition is also

25   imposed. If necessary, defendant shall participate in mental

```
 1   health counseling at the direction of the probation
 2   department, and because of past substance abuse, if necessary,
 3   defendant shall participate in a program approved by the
 4   probation department for substance abuse which may include
 5   testing to determine if the defendant has reverted to the use
 6   of drugs or alcohol.
 7              Defendant shall take all medications prescribed by
 8   any treating physician and shall not discontinue medication
 9   without explicit agreement by such physician.
10              Mr. Floarea, you do have the right -- oh, we've got
11   the forfeiture that we're entering.  The preliminary order of
12   forfeiture will be made part of the judgment and commitment,
13   as well as the restitution obligation to Sprint in the amount
14   of $600,000.
15              **PROBATION OFFICER:**  Your Honor, mandatory drug
16   testing would apply in this case.  The defendant does have a
17   history of marijuana and Vicodin use.
18              **THE COURT:**  All right.  I'm going to order that.
19              **MR. THOMAS:**  Your Honor, if the Court is going to
20   order that, then would you put in the judgment that RDAP is
21   suggested?
22              **THE COURT:**  He won't qualify for RDAP.
23              **MR. THOMAS:**  Well, then, why mandatory testing for
24   drugs?
25              **THE COURT:**  It's part of the supervised release.
```

1       **MR. THOMAS:**  In any event, will you allow, at least
2  make a recommendation that he, the Bureau of Prisons designate
3  him to Morgantown?
4       **THE COURT:**  Morgantown, sure, yes, I will do that.
5       Mr. Floarea, you have the right to -- I don't think
6  you have the right to appeal the sentence, actually, because
7  it's within the guideline range, and you've waived that as
8  part of your Rule 11 agreement.
9       To the extent there's any issue that you wish to
10 raise on appeal, that has to be done within 14 days.
11      I'll let you self surrender; that is, you'll wait
12 until we have a placement for you with the Bureau of Prisons.
13 The marshals will inform you and inform Mr. Thomas.  You may
14 self surrender.  I'm going to recommend Morgantown with maybe
15 Milan as a backup if they can't get you to Morgantown for some
16 reason, and then if you can't get there on your own, you're to
17 let Mr. Thomas know and he'll arrange for transportation
18 through the marshals.
19      I wish you good luck.
20      **THE DEFENDANT:**  All right, Your Honor.
21      **THE CLERK:**  Court stands in recess.
22      (Proceedings concluded 9:56 a.m.)
23
24
25

- - -

**C E R T I F I C A T I O N**

I, Suzanne Jacques, Official Court Reporter for the United States District Court, Eastern District of Michigan, Southern Division, hereby certify that the foregoing is a correct transcript of the proceedings in the above-entitled cause on the date set forth.

s:\_____

   Suzanne Jacques, RPR, RMR, CRR, FCRR
   Official Court Reporter
   Eastern District of Michigan

- - -

Case No. 14-CR-20614 U.S.A. vs. Floarea